**Stephen SULTENFUSS,**
**Plaintiff–Appellant,**

**Charles McMulling, et al., Plaintiffs,**

v.

**Wayne SNOW, Jr., James T. Morris, Mobley Howell, Michael H. Wing, Bettye O. Hutchings, Michael J. Bowers, Defendants–Appellees.**

**No. 91–8002.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 3, 1993.

---

Jill A. Pryor, Bondurant Mixon & Elmore, Atlanta, GA, for plaintiff-appellant.

Terry L. Long, Atty. Gen., Atlanta, GA, for defendants-appellees.

Before KRAVITCH, Circuit Judge, CLARK, Senior Circuit Judge, and PITTMAN *, Senior District Judge.

CLARK, Senior Circuit Judge:

This litigation was initiated by appellant Stephen G. Sultenfuss and several other Georgia state inmates alleging that the chairman and members of the Georgia Board of Pardons and Paroles had violated the inmates' constitutional rights by departing

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

from the parole guideline scheme in setting parole dates. On a previous appeal, we remanded this case to the district court to determine whether the current Georgia parole system, as modified following the 1980 legislation mandating adoption and application of a parole guideline system, gives rise to a' liberty interest in parole.[1] On remand, the district court concluded that the current system does not create a liberty interest in parole. We disagree. Having carefully reviewed the Georgia statutes and guidelines governing parole, we hold that the current Georgia parole system creates a liberty interest protected by the due process clause. Accordingly, we reverse the district court's decision and remand the case for further proceedings.

## I. BACKGROUND FACTS

Appellant Stephen G. Sultenfuss was convicted of two separate drug charges. He received two sentences, the longest of which is 15 years, calculated from August 24, 1986. This sentence expires on August 23, 2001. Applying the Georgia Parole Decision Guidelines, the Georgia Board of Pardons and Paroles assigned Sultenfuss a Parole Success Likelihood Score of 11, which is classified as "good," and a Crime Severity Level of II, on a scale of VII. The Parole Decision Grid indicated that an inmate with a Parole Success Likelihood Score of 11 and a Crime Severity Level of II should serve 10 months in prison. Nevertheless, in Sultenfuss's case, the Parole Board departed from the Grid recommendation and assigned Sultenfuss a 62–month incarceration period before parole.

Sultenfuss, along with several other Georgia inmates, filed this action pursuant to 42 U.S.C. § 1983 alleging that the Parole Board had violated their rights under the due process and equal protection clauses by departing from the Parole Decision Grid recommendation in setting their parole release dates. The inmates sought both injunctive and declaratory relief and compensatory damages. The district court sua sponte dismissed the inmates' complaint as frivolous pursuant to 28 U.S.C. § 1915(d). Relying on *Slocum v. Georgia State Board of Pardons and Paroles,*[2] the district court held that the Georgia parole system did not create a liberty interest in parole protected by the due process clause and, therefore, that the inmate's due process claim was frivolous. As to the equal protection claim, the district court determined that the inmates had failed to state a claim upon which relief could be granted because they had failed to allege that other prisoners similarly situated had been granted parole.[3] Only Sultenfuss perfected an appeal from the district court's sua sponte dismissal of the complaint.

On appeal, we affirmed the district court's dismissal of Sultenfuss's claim for compensatory damages, but reversed the district court's dismissal of Sultenfuss's complaint for equitable relief.[4] We acknowledged that *Slocum* held that the extant Georgia statutes governing parole did not create a liberty interest in parole, but we noted that *Slocum* addressed parole decisions made under the Georgia system as it existed in 1979 and 1980 and that, since that time, the Georgia parole system had been revised significantly. We concluded that the changes to the Georgia parole system were sufficiently significant to raise an arguable question of law as to whether the new system created a liberty interest in parole. Accordingly, we remanded the case for further proceedings.

On remand, the district court appointed counsel to represent Sultenfuss, and counsel filed a restated complaint on Sultenfuss's behalf. The State answered and filed a motion for summary judgment, arguing that the current Georgia parole system does not create a liberty interest in parole. The district court

---

1. *Sultenfuss v. Snow,* 894 F.2d 1277 (11th Cir. 1990).

2. 678 F.2d 940 (11th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982).

3. *See Damiano v. Florida Parole and Probation Commission,* 785 F.2d 929, 932 (11th Cir.1986) (disparate treatment claim requires showing,

first, that similarly situated inmates were not similarly treated and, second, that prison officials engaged in invidious discrimination based on race, religion, national origin, poverty, or some other constitutionally protected interest).

4. *Sultenfuss,* 894 F.2d at 1279.

agreed and granted the motion for summary judgment.[5] Sultenfuss filed this appeal.

## II. DISCUSSION

### A. Creation of a Liberty Interest

In *Greenholtz v. Nebraska Penal Inmates,*[6] the Supreme Court held that the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. The Supreme Court went on to hold, however, that a state statute governing parole release may create an "expectation of parole" protected by the due process clause.[7] Since *Greenholtz,* the Supreme Court has on several occasions addressed whether state laws and regulations create an enforceable liberty interest in the prison setting. For example, in *Connecticut Board of Pardons v. Dumschat,*[8] the Supreme Court held that the Connecticut statute governing commutation of prison sentences does not create a liberty interest; in so holding, the Court said: "The statute imposes no limit on what procedure is to be followed, what evidence may be considered, or what criteria are to be applied by the Board."[9] Similarly, in *Olim v. Wakinekona,*[10] the Supreme Court held that Hawaii's prison regulations governing prison transfers do not create a liberty interest:

> The[ ] cases demonstrate that a State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show "that particularized standards or criteria guide

the State's decisionmakers." If the decisionmaker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," the State has not created a constitutionally protected liberty interest.

Hawaii's prison regulations place no substantive limitations on official discretion and thus create no liberty interest entitled to protection under the Due Process Clause.[11]

On the other hand, in *Board of Pardons v. Allen,*[12] the Supreme Court determined that the Montana parole statute does create a liberty interest in parole. This statute provides, in pertinent part, that the parole board " *'shall* release on parole [any inmate] when in [the board's] opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community.' "[13] In reaching its conclusion that this statute creates a liberty interest, the Court focused on the statute's mandatory language: "Significantly, the Montana statute ... uses mandatory language ('shall') to 'creat[e] a presumption that parole release will be granted' when the designated findings are made."[14] The Court recognized that the Montana statute grants the parole board very broad discretion, but nevertheless held that this discretion was not incompatible with the existence of a liberty interest. The Court explained:

5. The district court's order granting summary judgment fails to mention Sultenfuss's equal protection claim. Nevertheless, we find no reversible error in the district court's treatment of this claim. Although Sultenfuss pled the equal protection claim in his restated complaint, he made no attempt to allege that similarly situated inmates were treated differently. *See Damiano,* 785 F.2d at 932. Moreover, Sultenfuss failed to even mention his equal protection claim in response to the state's motion for summary judgment.

6. 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

7. 442 U.S. at 11, 99 S.Ct. at 2106.

8. 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981).

9. 452 U.S. at 466, 101 S.Ct. at 2465.

10. 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

11. *Id.* at 249, 103 S.Ct. at 1747 (citations omitted).

12. 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

13. *Id.* at 376, 107 S.Ct. at 2420 (quoting Mont. Code Ann. § 46–23–201 (1985), with emphasis added).

14. *Id.,* U.S. at 377–78, 107 S.Ct. at 2420 (footnote omitted) (quoting *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106).

The Court thus held in *Greenholtz* that the presence of general and broad release criteria—delegating significant discretion to the decisionmaker—did not deprive the prisoner of the liberty interest in parole release created by the Nebraska statute. In essence, the Court made a distinction between two entirely distinct uses of the term discretion. In one sense of the word, an official has discretion when he or she "is simply not bound by standards set by the authority in question." R. Dworkin, Taking Rights Seriously 32 (1977). In this sense, officials who have been told to parole whomever they wish have discretion. In *Greenholtz*, the Court determined that a scheme awarding officials this type of discretion does not create a liberty interest in parole release. But the term discretion may instead signify that "an official must use judgment in applying the standards set him [or her] by authority"; in other words, an official has discretion when the standards set by a statutory or regulatory scheme "cannot be applied mechanically." Dworkin, *supra*, at 31, 32; see also *id.*, at 69 ("[W]e say that a man has discretion if his duty is defined by standards that reasonable [people] can interpret in different ways"). The Court determined in *Greenholtz* that the presence of official discretion in this sense is not incompatible with the existence of a liberty interest in parole release when release is *required* after the Board determines (in its broad discretion) that the necessary prerequisites exist.[15]

Thus, even a grant of broad discretion may give rise to a liberty interest if the decisionmaker is required to apply "standards set him [or her] by authority." For example, in *Hewitt v. Helms*,[16] the Supreme Court held that Pennsylvania prison regulations governing confinement in administrative segregation create a liberty interest in remaining in the general prison population. In so holding,

the Court focused on the required application of certain procedural guidelines:

> [I]n this case the Commonwealth has gone beyond simple procedural guidelines. It has used language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed, see n. 6 *supra*, and that administrative segregation will not occur absent specified substantive predicates, viz. "the need for control," or "the threat of a serious disturbance." ... [O]n balance we are persuaded that the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest.[17]

■ These decisions indicate that, even when a statute grants the decisionmaker very broad discretion, the statute may nevertheless create a liberty interest if it channels the decisionmaker's discretion by requiring the application of certain standards or guidelines. In a recent decision, after discussing these precedents regarding the creation of a liberty interest in the prison setting, the Supreme Court said: "In sum, the use of 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion, forces a conclusion that the State has created a liberty interest."[18]

### B. *The Georgia Parole System*

The Georgia Constitution provides that the State Board of Pardons and Paroles "shall be vested with ... the powers to grant reprieves, pardons, and paroles...."[19] Prior to 1980, there was no statutory requirement that the Board exercise this power in accordance with any specific guidelines or regulations. In 1980, however, the Georgia legislature enacted O.C.G.A. § 42–9–40. This stat-

---

15. *Id.*, at 375–76, 107 S.Ct. at 2419.

16. 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

17. *Id.*, at 471–72, 103 S.Ct. at 871.

18. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910,

104 L.Ed.2d 506 (1989) (holding that Kentucky prison regulations do not give inmates a liberty interest in receiving visitors) (quoting *Hewitt v. Helms*, 459 U.S. at 472, 103 S.Ct. at 871).

19. Ga. Const. art. 4, § 2, ¶ 2(a).

ute, which is entitled "Parole guideline system," provides:

(a) The board *shall* adopt, implement, and maintain a parole guidelines system for determining parole action. The guidelines system *shall* be used in determining parole actions on all inmates, except those serving life sentences, who will become statutorily eligible for parole consideration. The system *shall* be consistent with the board's primary goal of protecting society and *shall* take into consideration the severity of the current offense, the inmate's prior criminal history, the inmate's conduct, and the social factors which the board has found to have value in predicting the probability of further criminal behavior and successful adjustment under parole supervision.

(b) The guidelines system required by subsection (a) of this Code section *shall* be adopted by rules or regulations of the board. The rules or regulations shall be adopted in conformity with Chapter 13 of Title 50, the "Georgia Administrative Procedure Act." [20]

In accordance with the mandate of this statute, the Parole Board developed a Parole Decision Guidelines System.[21] These Guidelines begin with a statement of the System's purpose:

PURPOSE. In the parole decision process, the Board *shall* utilize a set of guidelines which consider both the severity of an individual's offense and the likelihood of the individual successfully completing a term of supervision on parole.[22]

The Guidelines go on to provide a step-by-step procedure that the Board must follow to arrive at a Tentative Parole Month (the month an inmate may expect to be released from prison) for each eligible inmate. First, the Board must assign the inmate a Crime Severity Level:

The Board deems the nature of the offense to be the most important element in the parole decision. Consequently, the guidelines are to be structured around a Crime Severity Index ranking crimes by increasing decree of seriousness.[23]

The Crime Severity Level is determined by reference to a table that lists dozens of specific crimes, with each crime assigned a level between I and VII.[24] Second, the Board must assign the inmate a Parole Success Likelihood Score:

Social and criminal history factors known by the Board rationally to relate to the likelihood of success on parole *shall* be included in an index known as the Parole Success Likelihood Score.[25]

The index from which the Parole Success Likelihood Score is determined consists of eight factors, each with a numerical scoring system designed to reflect the inmate's success or lack thereof as to that factor.[26] Third, the Board must apply the Parole Decision Grid:

The [Parole Success Likelihood Score] *shall* be used in conjunction with the Crime Severity Level finally to determine a recommended number of months to serve from the Parole Decision Guidelines grid.

. . . . .

PAROLE DECISION GRID. The Parole Decision Grid is the final component of the Parole Decision Guidelines, the application

---

**20.** O.C.G.A. § 42–9–40 (1991) (emphasis added).

**21.** The Parole Decision Guidelines System is not reprinted in the Georgia Secretary of State's official compilation of the Rules and Regulations of the State of Georgia. Appellant Sultenfuss has attached a copy of the Parole Decision Guidelines System as an appendix to his appellate brief. Appellant's Supplemental Brief Appendix E. The Board has not objected to or otherwise indicated that this appendix is not a true and correct copy of the guidelines system developed by the Board in response to O.C.G.A. § 42–9–40. Accordingly, we will cite to this appendix in our discussion of the Guidelines System.

**22.** Appellant's Supplemental Brief Appendix E at ¶ 8–1.01 (emphasis added).

**23.** *Id.*

**24.** R1–32 Exh. 3 Attach. B.

**25.** Appellant's Supplemental Brief Appendix E at ¶ 8–1.01 (emphasis added).

**26.** *Id.* at ¶ 8–17.03 through ¶ 8–25.02.

of which determines the months-to-serve recommendation.[27]

Finally, the Board must use the months-to-serve recommendation to fix a Tentative Parole Month:

> TENTATIVE PAROLE MONTH. The Tentative Parole Month, during which the offender may expect to be released, absent new information or other cause to cancel the Board's tentative release decision, *shall* be calculated by adding the recommended months-to-serve to the compute-from date of the controlling sentence.[28]

Thus, in accordance with the statutory mandate of the Georgia legislature, the Board developed the Parole Decision Guidelines System. This System, in turn, mandates that the Board assign an inmate a Crime Severity Level by reference to a table and a Parole Success Likelihood Score by reference to an index; apply the Parole Decision Grid to these scores to arrive at a months-to-serve recommendation; and then fix a Tentative Parole Month by adding the months-to-serve to the beginning date of the inmate's sentence.

Notwithstanding the mandatory language of the statute and the Guidelines quoted above, in other rules promulgated by the Board pursuant to O.C.G.A. § 42–9–40, the Board purports to reserve for itself the discretion to depart from the Parole Decision Grid's months-to-serve recommendation. Most notably, a rule entitled "Parole Consideration" provides in part:

> In considering parole for persons who will become statutorily eligible for parole consideration and who are serving less than a life sentence, the Board shall review a recommendation as to months to serve. This recommendation will be obtained from the Parole Decision Guidelines system which accounts for the severity of the crime and the inmate's likelihood of suc-

cess on parole. The inmate's likelihood of success on parole is measured by weighted factors concerning the inmate's criminal and social history which the Board has found to have value in predicting the probability of further criminal behavior and successful adjustment under parole supervision. *The Parole Decision Guidelines System is an aid to the Board in making more consistent, soundly based and explainable parole decisions and does not create a liberty interest. The Board specifically reserves the right to exercise its discretion under Georgia Law to disagree with the recommendation resulting from application of the Parole Decision Guidelines and may make an independent decision to deny parole or establish a Tentative Parole Month at any time prior to sentence expiration.* After the Board notifies the inmate of their decision, the inmate may contest either the Crime Severity Level or Parole Success Factor scores by writing within 30 days the Parole Guidelines Director in the Board's Central Office. Prior to an inmate being paroled the inmate's institutional conduct will be reviewed and institutional misconduct may result in a delay in parole release or a decision to deny parole. Any decision rendered under the Parole Decision Guidelines may be changed at the discretion of the Board at any time. The Board may modify any part of the Parole Decision Guidelines system at any time.[29]

Thus, according to the Board's own interpretation, the Parole Decision Guidelines System does not create a liberty interest in parole.

### C. *Georgia Has Created a Liberty Interest In Parole*

■ We disagree with the Board's interpretation. Having carefully reviewed the Georgia statutes governing parole, as well as

---

27. *Id.* at ¶ 8–17.02 and ¶ 8–26.01 (emphasis added).

28. *Id.* at ¶ 8–27.01 (emphasis added).

29. Ga.Rules 475–3–.05(5) (emphasis added); *see also* R1–32 Exh. 3 Attach. B, document entitled "State Board of Pardons and Paroles Parole Decision Guidelines," which states: *"NOTICE:* THE BOARD SPECIFICALLY RESERVES THE RIGHT TO EXERCISE ITS DISCRETION UNDER GEORGIA LAW TO DENY PAROLE EVEN THOUGH GUIDELINES CRITERIA ARE MET BY AN INMATE. IT IS NOT THE INTENTION OF THE BOARD TO CREATE A 'LIBERTY INTEREST' OF THE TYPE DESCRIBED IN GREENHOLTZ VS. NEBRASKA PENAL INMATES 442 US 1 (1979)."

the Parole Decision Guidelines developed and the rules promulgated pursuant to O.C.G.A. § 42–9–40, we conclude that Georgia has created a liberty interest in parole. Several factors require this conclusion.

First, O.C.G.A. § 42–9–40 contains "explicitly mandatory language." [30] Specifically, it provides that the Board "shall" adopt, implement, and maintain a parole guidelines system; that the Board "shall" use this system in determining parole actions on all inmates except those serving life sentences; and that the system "shall" take into consideration certain specified factors. The Guidelines also contain mandatory language. They provide that the Board must assign each eligible inmate a Crime Severity level and a Parole Success Likelihood Score; that these scores "shall" be used to determine a recommended number of months to serve from the Parole Decision Grid; and that an inmate's Tentative Parole Month "shall" be calculated by adding the recommended months-to-serve to the beginning date of the inmate's sentence. This mandatory language in the statute and the Guidelines creates a "presumption that parole release will be granted" [31] in accordance with the recommended months-to-serve as determined by the Parole Decision Grid.

Second, the statute and the Guidelines establish "specified substantive predicates" [32] that significantly limit the Board's discretion. The statute specifically mandates the adoption and consistent application of a "parole guidelines system." The Guidelines, which embody the "system" adopted, require that the Board assign each eligible inmate a Crime Severity Level by reference to a table that designates the level to be assigned to specific crimes. The Guidelines further require that the Board determine an inmate's Parole Success Likelihood Score by considering eight specific factors, each with a detailed numerical system for scoring the inmate's

relative success as to that factor. Certainly, these eight factors cannot be scored mechanically, and, therefore, the Board exercises some discretion in calculating an inmate's Parole Success Likelihood Score. This is not the type of discretion, however, that is incompatible with the existence of a liberty interest; rather, it is the type of discretion that requires an official to "use judgment in applying the standards set him [or her] by authority." [33] Following the determination of an inmate's Crime Severity Level and Parole Success Likelihood Score, the Guidelines provide for a mechanical application of the Parole Decision Grid and a mechanical calculation of the Tentative Parole Month. Without question, the Guidelines place "substantive limitations on [the Board's] official discretion." [34]

Third, we find it significant that the Georgia legislature chose to change the Georgia parole system in 1980 by enacting O.C.G.A. § 42–9–40. In *Allen,* the Supreme Court relied on a change in the Montana parole statute to support its conclusion that the new statute created a liberty interest in parole. Noting that the old statute granted absolute discretion to the Board, the Court found that the new statute provided an "indication of a legislative intent to cabin the discretion of the Board." [35] Similarly, prior to 1980, the Georgia statutes did not place limits on the Board's discretion to determine when an eligible inmate was to be released on parole. By enacting O.C.G.A. § 42–9–40, the Georgia legislature mandated that such parole determinations be made in accordance with a parole guidelines system. We see this change in the law as an indication that the Georgia legislature intended to limit the Board's discretion in making parole determinations.

 Thus, we conclude that the mandatory language of the statute and the Guidelines, combined with the particularized stan-

---

30. *Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910 (internal quotations omitted).

31. *Allen,* 482 U.S. at 377, 107 S.Ct. at 2420 (internal quotations omitted).

32. *Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910 (internal quotations omitted).

33. *Allen,* 482 U.S. at 375, 107 S.Ct. at 2419 (internal quotations omitted).

34. *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747 (internal quotations omitted).

35. 482 U.S. at 381, 107 S.Ct. at 2422.

dards that guide the Board's parole determinations, create a liberty interest in parole release in Georgia. We find unpersuasive the Board's reliance on Ga.Rule 475–3–.05(5), quoted above, in which the Board (1) purports to reserve for itself the discretion to "disagree" with parole determinations resulting from application of the Parole Decision Guidelines System, and (2) states that this System "does not create a liberty interest." This rule is inconsistent with both the applicable statute and the Guidelines. O.C.G.A. § 42–9–40 does not grant the Board the discretion to "disagree" with parole determinations resulting from application of the Guidelines; to the contrary, it mandates that the Guidelines "be used in determining parole actions on all [eligible] inmates...." Likewise, there is no provision in the Guidelines for the Board to depart, or "disagree," with a Guidelines determination. Moreover, we are not bound by the Board's determination that the Parole Decision Guidelines System "does not create a liberty interest." [36] It is for the federal courts to determine whether the Georgia parole scheme, as embodied in the Georgia constitution and the applicable statutes, rules and guidelines, creates a liberty interest in parole release protected by the due process clause of the Fourteenth Amendment.

■ We also find unpersuasive the Board's reliance on O.C.G.A. § 42–9–42(c) (1991), which provides, in part: "No inmate shall be placed on parole until and unless the board shall find that there is reasonable probability that, if he is so released, he will live and conduct himself as a respectable and law-abiding person and that his release will be compatible with his own welfare and the welfare of society." This statute is similar to the Montana statute at issue in *Allen;* that statute provided, in part: " 'A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.' " [37] The Supreme Court concluded that this language was not inconsistent with the liberty interest created by other mandatory language of the statute. Likewise, we conclude that the language of O.C.G.A. § 42–9–42(c) is not inconsistent with the liberty interest created by O.C.G.A. § 42–9–40 and the Guidelines promulgated pursuant thereto.

### III. *CONCLUSION*

■ Accordingly, we conclude that the current Georgia parole system, as embodied in the Georgia constitution, the Georgia statutes, and the rules and guidelines promulgated pursuant to those statutes, creates a liberty interest in release on parole protected by the due process clause of the Fourteenth Amendment. The district court's decision is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.[38]

---

**36.** This situation, in which the Board purports to declare that the Georgia parole scheme does not create a liberty interest, stands in marked contrast to the situation in Florida, in which the Florida legislature has, by statutory enactment, specifically declared that there is no "right" to parole in Florida: "It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of his sentence is an act of grace of the state and shall not be considered a right." Fla.Stat. § 947.002 (1985). There is no comparable statute in Georgia.

**37.** 482 U.S. at 376, 107 S.Ct. at 2420 (quoting Mont.Code Ann. § 46–23–201 (1985)).

**38.** It has come to the panel's attention that Sultenfuss now has been paroled under supervision. This raises an issue of whether the case is moot. There appears to be a conflict between Supreme Court precedent in *Jago v. Van Curen,* 454 U.S. 14, 21 n. 3, 102 S.Ct. 31, 36 n. 3, 70 L.Ed.2d 13 (1981) (holding case not moot where prisoner had been released on parole subject to conditions "that significantly restrict this freedom"), and a subsequent Eleventh Circuit decision, *Graham v. United States Parole Commission,* 732 F.2d 849 (11th Cir.1984) (holding case moot where prisoner had been released on parole subject to conditions).

In light of this conflict, the panel feels that ultimately the mootness issue must be resolved by the Eleventh Circuit sitting en banc. However, the panel need not decide the mootness issue because here we hold that the liberty-interest issue is "capable of repetition, yet evading review." *See Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969). For this reason, we are filing the opinion.

Members of the panel recommend that the case be considered en banc because of the importance of the liberty-interest issue and the apparent conflict in the law on mootness.

**1552**

PITTMAN, Senior District Judge, concurring in part and dissenting in part:

I concur with that portion of the majority opinion which concludes that this case is not moot. I respectfully dissent from that portion of the majority opinion which concludes that the Georgia parole system, as embodied in the Georgia constitution, the Georgia statutes, and the rules and guidelines promulgated pursuant to those statutes, creates a liberty interest in release on parole protected by the due process clause of the Fourteenth Amendment. For that reason, I would affirm the judgment of the District Court.