15 F.3d 1085
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Garry T. HARRELL, Petitioner-Appellant,
v.
Eddie YLST, et al., Respondent-Appellee.
 No. 92-16836.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 13, 1993.*
Decided Jan. 11, 1994.
 
 Before: WALLACE, Chief Judge, GARTH** and WIGGINS, Circuit Judges.
 
 MEMORANDUM
 
 1
 Harrell, a convicted first-degree murderer, appeals the dismissal by the district court of his petition for habeas corpus relief. Harrell asserts that his due process rights were violated when the California Parole Board, sitting en banc, nullified a proposed parole date that had been tentatively granted by a 2-1 vote of a parole hearing panel. We affirm, though on slightly different grounds than those relied upon by the district court.
 
 I.
 
 2
 The Due Process Clause provides that a person may not be deprived of life, liberty, or property, without due process of law. Only a limited range of interests, however, fall within this provision. That is, to assert a valid due process claim, one must first demonstrate that he has a constitutionally protected liberty interest with which the State has interfered. Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989). He must then prove that the procedures attendant upon the claimed interference were constitutionally insufficient. Id.
 
 
 3
 With respect to the present case, the Supreme Court has recognized that the mere existence of a parole system does not give rise to a constitutionally protected liberty interest in parole release, but that a properly fashioned (i.e., mandatory) state statute may create an expectation of release protected by the Due Process Clause. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987), relying on Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 11 (1979) (holding "that the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained"). Accord Connecticut Board of Pardons v. Dumschat, 452 U.S. 458 (1981).
 
 
 4
 Harrell first argues that he had an inherent liberty interest in the tentative release date granted by the parole hearing panel, arising directly from the Due Process Clause of the United States Constitution.[1] Harrell's legal contention is wholly without merit.
 
 
 5
 The Supreme Court has "consistently refused to recognize more than the most basic liberty interest in prisoners." Hewitt v. Helms, 459 U.S. 460 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976). In Greehholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979), the Supreme Court held:
 
 
 6
 There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right.
 
 
 7
 Accord Connecticut Board of Pardons v. Dumschat, 452 U.S. 458 (1981). These authorities are dispositive. Harrell has no protected liberty interest in parole and, therefore, he can have no protected liberty interest, arising directly from the Due Process Clause, as the result of the hearing panel's grant of a tentative, non-final, parole date.
 
 
 8
 Unlike the district court, however, we find that the mandatory language of California's statutory parole scheme created an "expectancy of release" which is a liberty interest entitled to some measure of constitutional protection. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 12 (1979).
 
 
 9
 The Supreme Court has held that a state creates a protected liberty interest by placing substantive limitations on official discretion. Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 462 (1989). Usually this is done "by establishing "substantive predicates" to govern official decisionmaking, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Id. As the Court explained in Board of Pardons v. Allen, 482 U.S. 369, 376 (1987), "the presence of official discretion," in the sense that an official may use his discretion in applying the standards set out for him by authority, "is not incompatible with the existence of a liberty interest in parole release when release is required after the Board determines (in its broad discretion) that the necessary prerequisites exist."
 
 
 10
 Comparing the statute at issue here, Cal.Pen.Code Sec. 3041(b),[2] with those held by the Supreme Court to establish a liberty interest in Greenholtz[3] and Allen,[4] there seems to be no dispositive distinction. As the Court concluded in Allen, "[h]ere, as in Greenholtz, the release decision is 'necessarily subjective ... and predicative;' here, as in Greenholtz, the discretion of the Board is 'very broad;" here as in Greenholtz, the Board shall release the inmate when the findings prerequisite to release are made." Board of Pardons v. Allen, 482 U.S. at 381.
 
 
 11
 Consequently, to the extent the district court's decision was based on the fact that the California parole scheme did not create a constitutionally protected expectation of parole, its denial of Harrell's petition was in error. We need not reverse the district court's order, however, if the process afforded by California's parole scheme satisfied the minimum requirements of the Due Process Clause. We hold that it did.
 
 II.
 
 12
 The Supreme Court has noted that due process in the prison context is not identical to due process in free society. Hewitt v. Helms, 459 U.S. at 472 (holding prison officials obligated to engage only in an informal, non-adversary review of information supporting Helms's administrative confinement). After finding a constitutionally protected expectancy of parole, the Supreme Court in Greenholtz held that "[m]erely because a statutory expectation exists cannot mean that in addition to the full panoply of due process required to convict and confine there must also be repeated, adversary hearings in order to continue confinement." 442 U.S. at 14 (1979). Rather, due process is satisfied where an inmate is offered an opportunity to be heard and, when parole is denied, clarification of the reasons he failed to qualify for parole. Id. at 16.
 
 
 13
 Harrell does not deny that he was granted the opportunity to appear at his panel hearing. Rather, he contends that he should have been granted a similar right to appear when the Board reviewed the hearing panel's decision en banc. The Supreme Court's decisions do not support such a requirement. As noted above, the Supreme Court has rejected the notion that parole determinations require repeated hearings and adversary proceedings.
 
 
 14
 Harrell does not contend, nor does he prove, that he was prejudiced in any way by the alleged denial of his due process rights. As the State points out, although Harrell "accurately alleges that neither he nor his attorney was allowed to appear before the full Board, he does not explain how his appearance with or without counsel would have made a different result more likely." Nor does Harrell explain how the process provided him would have been improved or made more fair by his being present at the Board's en banc review. He has presented this court with no information which even suggests that, had he been present at the en banc review hearing, the Board's decision would have been different.
 
 
 15
 The purpose of the en banc review process simply "is to assure complete accurate, consistent and uniform [parole] decisions." Cal.Code of Regs., tit. 15, Sec. 2042. "It is axiomatic that due process 'is flexible and calls for such procedural protection as the particular situation demands.' " Greenholtz, 442 U.S. at 12 (1979) (citing cases). Considering, as a whole, the approach the Supreme Court has adopted with respect to parole decisions, Harrell's claim that California's parole procedures violate due process is untenable.
 
 
 16
 In sum, we conclude that Harrell did have an "expectancy of parole" which was a liberty interest entitled to due process protection. We hold, however, that the due process granted him satisfied all constitutional requirements.
 
 
 17
 AFFIRMED.
 
 WALLACE, Chief Judge, concurring:
 
 18
 I see no need to determine whether a due process right exists as held in part I. It is clear that is such a right exists, all the process due Harrell was provided as held in part II. Thus, I concur in part II only.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Leonard I. Garth, United States Circuit Judge, Third Circuit Court of Appeals, sitting by designation
 
 
 [1]
 Harrell argues that because the parole hearing panel set a date for his conditional release, the present circumstances fall outside the holdings of Greenholtz and Dumschat. The date set by a three-member hearing panel, however, when challenged by a member of that hearing panel, is merely a proposed date, subject to approval or nullification by the Parole Board, en banc. Thus, it creates no more than a "possibility of parole" and "provides no more than a mere hope that the benefit will be obtained."
 
 
 [2]
 Section 3041(b) of the California Penal Code provides in relevant part as follows:
 The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.
 Regulations enacted pursuant to the California Penal Code delineate additional specific factors a hearing panel should consider in determining whether an inmate is suitable for parole. Cal.Code Regs., tit. 15, Sec. 2281(c).
 
 
 [3]
 The Nebraska statute at issue in Greenholtz provided that the Board of Parole "shall" order a prisoner release unless it is of the opinion that there is a substantial risk that the prisoner will not conform to the conditions of parole, that his release would depreciate the seriousness of his crime or promote disrespect for the law, that his release would have an adverse effect on institutional discipline, or that continued incarceration will enhance his capacity to lead a law-abiding life when released at a later date
 
 
 [4]
 The Montana statute at issue in Allen provided in part that the Board "shall" release an inmate on parole "when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community." Much as in the present case, a list of factors to be considered is set out in the Montana regulations