### Robert Russell WORLEY, Michael Leroy Getty, Plaintiffs,

v.

### The GEORGIA BOARD OF PARDONS AND PAROLES; James T. Morris; J. Wayne Garner; Bettye O. Hutchings; Timothy E. Jones; and Bobby K. Whitworth, in Their Individual Capacities, Defendants.

#### Civil No. 1:94–cv–1393A–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 22, 1996.

Robert Russell Worsley, Michael Leroy Getty, Pro Se.

Lori V. Winkleman, Office of State Attorney General, Atlanta, GA, for Defendants.

## ORDER

CARNES, District Judge.

This case is presently before the Court on plaintiffs' Motion for Reconsideration of Judgment [41] and plaintiffs' Emergency Motion for Appointment of Counsel [42]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiffs' motions should be denied.

## BACKGROUND

Plaintiffs are inmates of the Georgia State Prison. Both are serving life sentences for convictions of armed robbery in unrelated incidents. Both plaintiffs unsuccessfully appealed their convictions.

Under the relevant version of the Code, inmates serving life sentences are not automatically considered for parole until they have served seven years. *See* O.C.G.A. § 42–9–45(b) ("Inmates serving sentences aggregating 21 years or more shall become eligible for consideration for parole upon completion of the service of seven years."). If an inmate has been convicted of one of the crimes listed in 42–9–45(f), a grant of parole prior to the expiration of seven years may only be granted "to correct a patent miscarriage of justice." O.C.G.A. § 42–9–45(f).[1] Plaintiff Worley requested exceptional parole pursuant to O.C.G.A. § 42–9–45(f) alleging a "patent miscarriage of justice." Plaintiff Getty never made such a request. Both inmates were notified by letter of a denial of parole. The letters did not set forth the reasons for the denials. (*See* Pl.Resp. to Def.Mot. to Dismiss [38] at 2 and exhibits.)

Plaintiffs brought this *pro se* suit in federal court pursuant to 42 U.S.C. § 1983. Specifically they alleged that defendant "denied the plaintiffs their constitutional right to due process of law when, after reviewing the

---

**1.** This subsection has since been amended effective January 1, 1995. For purposes of this case, however, the Court will address plaintiffs' argu-ments with respect to the version of the section in place at the time they were denied parole.

plaintiffs['] cases, they [defendant] denied parole without stating any grounds upon which the denial was based."[2] (Compl. at i.) Defendants filed a Motion to Dismiss [37]. That motion was granted by Order of this Court [39] on July 25, 1995 in light of the Eleventh Circuit opinion in *Sultenfuss v. Snow*, 35 F.3d 1494 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1254, 131 L.Ed.2d 134 (1995).

Plaintiffs subsequently filed this Motion for Reconsideration of Judgment [41]. It is plaintiffs' contention that "the court incorrectly determined that the 'threshold question' of this complaint is 'whether the Georgia Parole Guidelines System creates ... a protectible due process interest in parole.'" (Pls.Mot. for Reconsid. [41] at 2.) Instead, plaintiffs posit that "the focus of [their] complaint lies in the 'exceptional parole process' as created and governed by O.C.G.A. §§ 42–9–45(f); 42–9–46; and Ga.Comp.R. & Regs.R. 475–3–.06(1)."[3] (*Id.*)

## DISCUSSION

■ In 1994, the Eleventh Circuit *en banc* ruled that the Georgia Parole Guidelines System did not create a protectible liberty interest in parole, and thus, does not serve as the basis for a § 1983 due process claim. *Sultenfuss v. Snow*, 35 F.3d 1494 (11th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1254, 131 L.Ed.2d 134 (1995). Plaintiffs correctly note that O.C.G.A. § 42–9–40, entitled "Parole guidelines system," does not apply to inmates who, like themselves, are serving life sentences. *See* O.C.G.A. § 42–9–40. Plaintiffs posit that the statutes and regulations governing the exceptional parole process are relevant in their case, and unlike the Parole Guidelines System, create a protectible liberty interest in parole.

The Court will proceed to determine whether plaintiffs have a liberty interest in exceptional parole. Absent such an interest, Due Process is not implicated, thus obviating the need for further analysis.

Plaintiffs cite O.C.G.A. § 42–9–45(f) in support of their argument that the exceptional parole process creates a protectible liberty interest in parole. It states:

> Except to correct a patent miscarriage of justice and not otherwise, no inmate serving a sentence imposed for any of the crimes listed in this sub-section shall be granted release on parole until and unless said inmate has served on good behavior seven years of imprisonment or one-third the prison term imposed by the sentencing court for the violent crime, whichsoever first occurs.... This subsection shall govern parole actions in sentences imposed for any of the following crimes: voluntary manslaughter, armed robbery, kidnapping, rape, aggravated sodomy, aggravated child molestation, statutory rape, incest, cruelty to children, arson in the first degree, homicide by vehicle while under the influence of alcohol or as a habitual traffic violator, aggravated battery, aggravated assault, trafficking in drugs, and violations of Chapter 14 of Title 16, the 'Georgia' RICO (Racketeer Influenced and Corrupt Organizations) Act. Inmates serving sentences aggregating 21 years or more shall become eligible for consideration for parole upon the completion of the service of seven years.

*See* O.C.G.A. § 42–9–45(f). Plaintiffs also refer the Court to O.C.G.A. § 42–9–46 and the Georgia Administrative Code, Rules of State Board of Pardons and Paroles, Chapter 475–3.[4]

■ In evaluating whether a liberty interest exists, the Eleventh Circuit drew upon the Supreme Court's discourse in *Kentucky Dep't of Corrections v. Thompson*, which ex-

---

**2.** The Due Process Clause states: "No State shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const., Amend. XIV, § 1.

**3.** The Court expresses doubt as to whether plaintiff Getty has standing to raise this argument, as he has never requested exceptional parole. (*See* Pl.Resp. to Def.Mot. to Dismiss [38] at 2.)

**4.** While the Rules are relevant and will be discussed further, the Court finds that O.C.G.A. § 42–9–46 does little for the analysis. This section simply requires that where the board contemplates granting early parole, it must provide notice to interested parties who may wish to express their views or make objections. *See generally*, O.C.G.A. § 42–9–46.

plains the threshold requirements for the creation of a protectible interest:

> The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or · desire" and must be based on more than a "unilateral hope." Rather, an individual claiming a protected liberty interest must have a legitimate claim of entitlement to it.

*Sultenfuss*, 35 F.3d at 1499 (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)). Although the Eleventh Circuit specifically addressed the parole guideline system—as opposed to the exceptional parole process—the Court finds that here, too, there is no legitimate claim of entitlement to the claimed liberty interest.

In *Sultenfuss*, the Eleventh Circuit delineated a three part test to determine whether the Georgia statutes and regulations pertaining to the Parole Guidelines System created a protectible liberty interest in parole. The Court considered three factors in concluding that Georgia law did not establish a cognizable liberty interest in parole: (1) whether the system places substantive limitations on the discretion of the decisionmakers; (2) whether the system mandates the outcome that must follow if the substantive predicates are met; and (3) whether the relevant statutes and regulations contain explicitly mandatory language dictating the procedures that must be followed and the result that must be reached if the relevant criteria are satisfied. *Sultenfuss*, 35 F.3d at 1500. In conducting the analysis, the Eleventh Circuit recognized that the factors sometimes overlap. *Id.*

Applying the three part test used in *Sultenfuss*, the Court finds that no protectible liberty interest is created by the exceptional parole process. In fact, the Court finds even less indicia of a protectible liberty interest, as there are few, if any, mandatory procedures or limits on the decision-makers' discretion that would compel the grant of exceptional parole.

1. *Does the system place substantive predicates on the discretion of state officials?*

According to *Sultenfuss*, "[t]he inmate must establish that the statute or regulations provide particularized criteria for the decisionmaker to follow ... and that these standards '*meaningfully* constrain the discretion of state officials.'" *Sultenfuss* 35 F.3d at 1501 (quoting *Bd. of Pardons v. Allen*, 482 U.S. 369, 384, 107 S.Ct. 2415, 2424, 96 L.Ed.2d 303 (1987) (O'Connor, J., dissenting)). The Court finds that, rather than limiting the decisionmaker's ability to *deny* parole, the statute and accompanying regulations greatly restrict the board's discretion to *grant* parole for individuals convicted of violent crimes, such as armed robbery.

In reaching this conclusion, the Court turns to one of the sections upon which plaintiffs rely, section 45, entitled "General rulemaking power." This section grants the board the power to "adopt and promulgate rules and regulations, not inconsistent with this chapter, touching all matters dealt with in this chapter, including, among others, the practice and procedure in matters pertaining to paroles, pardons, and remission of fines and forfeitures...." O.C.G.A. § 42–9–45(a). The Code, however, prescribes the minimum amount of time that an inmate must serve before he or she is eligible for parole, depending on the type of crime for which he or she was convicted. O.C.G.A. § 42–9–45(b). Notwithstanding these proscriptions, the Georgia Supreme Court has ruled that "the board can consider an inmate for parole before service of the minimum time specified in § 42–945(b), so long as the notice required by § 42–9–46 is given." *Charron v. State Bd. of Pardons & Paroles*, 253 Ga. 274, 277, 319 S.E.2d 453 (1984).

As a caveat to the ability to grant early or exceptional parole, O.C.G.A. § 42–9–45(f) limits the board's power to grant early parole with respect to certain types of criminals. *See* O.C.G.A. § 42–9–45(f) ("This subsection shall govern parole actions in sentences imposed for any of the following crimes: voluntary manslaughter, armed robbery, kidnapping, rape, aggravated sodomy, aggravated child molestation, statutory rape, incest, cru-

elty to children, arson in the first degree, homicide by vehicle while under the influence of alcohol or as a habitual traffic violator, aggravated battery, aggravated assault, trafficking in drugs, and violations of Chapter 14 of Title 16, the 'Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act.'"). The Board may grant exceptional parole to those convicted of the abovementioned crimes only "to correct a patent miscarriage of justice." O.C.G.A. § 42–9–45(f).

It is apparent, therefore, that, for individuals convicted of crimes specifically listed in this section, the possibility of exceptional parole is minuscule. Notably, the name—"*exceptional* parole"—itself conveys the extraordinary nature of this method of obtaining parole and indicates that this is not something in which a prisoner has a liberty interest. Similarly, pursuant to Rule 475–3.06 of the Georgia Administrative Code, consideration of parole for an individual serving a life sentence before the requisite seven years period is warranted only if the Board "finds substantial justification for considering the case earlier." Ga.Comp.R. & Regs.R. 475–3.06. The Court finds that the limit on the board's discretion with regard to granting exceptional parole cuts against, rather than supports, plaintiffs argument that the exceptional parole process creates a liberty interest in parole.

## 2. *Does the system mandate the outcome that must be reached if the relevant criteria have been met?*

The Eleventh Circuit found no mandate in the Georgia statutes and regulations that parole be granted if the applicable formula recommended release. *See Sultenfuss,* 35 F.3d at 1501–02 ("Neither the relevant statutes nor the Guidelines contain any language mandating the outcome that must be reached after application of the specified procedures.").

After evaluating the pertinent statutes and regulations, this Court, paralleling the Court in *Sultenfuss,* finds that the Georgia statutes actually create a presumption *against,* rather than for, exceptional parole. *See id.* at 1502 ("Conversely, the Georgia statutes actually create a presumption *against* parole." (emphasis in original)).

In *Sultenfuss,* the court examined O.C.G.A. § 42–9–42, which provides that "[n]o inmate shall be placed on parole until and unless the board shall find that there is a reasonable probability that, if he is so released, he will live and conduct himself as a respectable and law-abiding person and that his release will be compatible with his own welfare and the welfare of society." *Id.* (citing O.C.G.A. § 42–9–42). Plaintiffs state that they challenge a different section of the Georgia Code, warranting a separate determination of whether a liberty interest in parole is created. The section challenged, however, is phrased in the same manner as the section analyzed in *Sultenfuss. See* O.C.G.A. § 42–9–45(f) ("Except to correct a patent miscarriage of justice and not otherwise, *no inmate serving a sentence imposed for any of the crimes listed in the subsection shall be granted release on parole until and unless said inmate has served on good behavior seven years of imprisonment or one-third of the prison term imposed by the sentencing court for the violent crime, whichsoever first occurs.*" (emphasis added)). Like the Eleventh Circuit in *Sultenfuss,* this Court finds that the exceptional parole process "contains a statutory presumption against parole and fails to limit meaningfully the discretion of state officials." *Sultenfuss,* 35 F.3d at 1503.

## 3. *Do the relevant statutes and regulations contain explicitly mandatory language directing the decisionmaker to follow certain procedures?*

After a review of the statutes and regulations referenced by plaintiffs, this Court finds, "no mandatory language [ ] expressly dictating the outcome that must follow if the criteria are met." *Sultenfuss,* 35 F.3d at 1502. No section of the Code or regulation alluded to by plaintiffs "*mandate[s] release* if the criteria are met." *Id.* (emphasis in original). The "criteria" for obtaining parole under the exceptional parole process is based upon a Board determination that a patent miscarriage of justice has occurred. O.C.G.A. § 42–9–45(f). This determination is necessarily discretionary.

In contrast, when automatic review for parole is at issue, as it was in *Sultenfuss,* the Board is directed to follow a rigid procedure for determining when the inmate should be released under the Guidelines System. The criteria in that situation is reducible to actual figures or scores. These scores translate into a recommendation of the number of months the inmate should serve before being released on parole.

The process for granting parole when one is automatically eligible creates more of a legitimate expectation of release, as compared to the process of determining whether there has been a "patent miscarriage of justice." The exceptional parole process is reserved for those rare cases where a grave error must be corrected. The burden of demonstrating the error is, therefore, an extremely high one.

■ The Court finds that the statutes and regulations governing the exceptional parole process do not exemplify the type of system that is meant to ensure inmates a definite outcome. In sum, the Court concludes that plaintiffs have not established a protectible liberty interest, but instead, have shown simply a "unilateral hope" in early parole. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989).[5]

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Reconsideration [41] is **DENIED,**[6]

and plaintiffs' Emergency Motion for Appointment of Counsel [42] is also **DENIED.**

SO ORDERED.

---

5. In addition, plaintiffs claim that they are entitled, under the protections of the Due Process Clause, to know the reasons for the Board's denial of exceptional parole. (*See* Pl.Resp. to Def.Mot. to Dismiss [38] at 3, 9.) They refer to Rule 475–3–.05(2) which states: "Reconsideration of those inmates serving life sentences who have been denied parole shall take place at least every eight years. The Board will inform inmates denied parole of the reasons for such denial without disclosing confidential sources of information or possible discouraging diagnostic opinions." Ga.Comp.R. & Regs.R. 475–3–.05. This section, as defendants have pointed out, ostensibly refers to automatic parole determinations made by the Board, not those determinations prompted by a request for exceptional parole.

Moreover, as no liberty interest arises from the exceptional parole process, the Due Process Clause is not violated where an explanation is not given upon denial of early parole. *See Georgia State Bd. of Pardons & Paroles v. Turner,* 248 Ga. 767, 767–68, 285 S.E.2d 731, 731 (1982) (stating in dicta: "No prescribed grounds existed upon which the Board would have been required to have granted [the inmate] parole. Hence, the due process clause of our federal constitution does not require the Board to explain its reasons for denying him parole.").

6. Additionally, plaintiffs concede that the Georgia Board of Pardons and Paroles is not a "person" subject to suit under 42 U.S.C. § 1983 and would be dismissed as a defendant regardless.