COLE, Circuit Judge,
dissenting.
The majority claims that Michigan’s parole system does not create a liberty interest because “ah actual release determination remains uncertain and subject to a broad grant of discretion.” Op. at 395. Neither of these considerations changes the fact that, under controlling Supreme Court precedent, see Bd. of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), Michigan’s parole system “creates a presumption that parole release will be granted,” Greenholtz, 442 U.S. at 12, 99 S.Ct. 2100, and thus establishes a liberty interest, for prisoners classified with a “high probability of parole.” I would therefore REVERSE the district court’s judgment.
As an initial matter, I agree with the majority that our only published decision on this issue, Sweeton v. Brown, 27 F.3d 1162 (6th Cir.1994) (en banc), addressed a different Michigan statutory parole system, which vested more discretion in the parole board. See In re Parole of Johnson, 219 MichApp. 595, 556 N.W.2d 899, 900 (1996). Sweeton thus does not bind us, and its reasoning fails to survive scrutiny in light of Michigan’s current system.
As the majority notes, “in all statutory construction cases, we begin with the lan *406 guage itself [and] the specific context in which that language is used.” McNeill v. United States, — U.S. -, 131 S.Ct. 2218, 2221, 180 L.Ed.2d 35 (2011) (internal quotation marks omitted). This analysis, focuses on “the ordinary meaning of the term.” Ransom v. FIA Card Servs., — U.S.-, 131 S.Ct. 716, 724, 178 L.Ed.2d 603 (2011). The relevant Michigan statutory language is: “The parole board may depart from the parole guideline by denying parole to a prisonér who has a high probability of parole as determined under the parole guidelines.... A departure under this subsection shall be for substantial and compelling reasons stated in writing.” Mich. Comp. Laws § 791.233e(6) (emphasis added). The parole guidelines standards “shall govern the exercise of the parole board’s discretion.” Id. § 791.233e(l).
The plain interpretation of this language is that inmates with a “high probability of parole” are presumed to receive parole. If the Michigan parole board wants to deny these individuals parole, it has the discretion to do so, but only “for substantial and compelling reasons stated in writing.”[1] Id. § 791.233e(6). Michigan therefore “creates a presumption that parole release will be granted” to inmates with a “high probability of parole,” so it creates a liberty interest for these individuals. See Greenholtz, 442 U.S. at 12, 99 S.Ct. 2100.
After quoting the relevant Michigan statutory language, however, the majority never conducts an assessment of the statute’s ordinary meaning — an assessment that compels finding a liberty interest present here. Instead, the majority notes that several factors go into the determination of who receives the “high probability of parole” designation, points out that only a sub-section of parolees receive this designation, and claims that the “substantial and compelling” factual predicate undermines the finding of a liberty interest. Lastly, the majority makes much ado of the difference between a “probability” and a “presumption.” Each of the arrows in the majority’s quiver misses the mark, and all of them fail to strike at the heart of what the majority acknowledges is the most important element of statutory interpretation: the language of the statute itself.
First, the majority contends that a prisoner’s classification depends on “a variety of factors,” “[m]ost of [which] seem objective ... [b]ut other[s of which] appear more subjective.” Op. at 402-03 & n. 6. The majority also protests that a prisoner’s “classification is not discernable from a -casual reading of the parole statute.” Id. at 402. But the factors relevant to the parole-guidelines classification are no more discretionary (or “subjective”) than those relevant to parole that the Supreme Court reviewed in Greenholtz. In that case, the Court noted that “the [parole release] decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decision-maker and leading to a predictive judgment as to what is best both for the individual inmate and for *407 the community.” Greenholtz, 442 U.S. at 8, 99 S.Ct. 2100. Nonetheless, the Court found that Nebraska’s parole system created a presumption of release on parole even though the Nebraska statute “require[d] the [parole b]oard to assess whether, in light of the nature of the crime, the inmate’s release will minimize the gravity of the offense, weaken the deterrent impact on others, and undermine respect for the administration of justice.” Id.
The Michigan factors relevant to a “high probability of parole” classification are no more discretionary or amorphous: the characteristics of the crime, the prisoner’s prior criminal record and mental health, the prisoner’s conduct during incarceration, and so on. See Mich. Admin. Code r. 791.7716; see also id. r. 791.7715. And the fact that Michigan’s parole system only gives some inmates a legitimate expectation of parole is of no moment, for parole systems typically segregate inmates into distinct classes, some of whom are eligible for parole (and thus a possible liberty interest) and some of whom are not. See, e.g., Mich. Comp. Laws § 791.234. The Montana parole system analyzed in Allen did precisely the same thing. See Mont. Code Ann. § 46-23-201 (1985). Here, Michigan’s statutory scheme simply conducts a further narrowing of the subcategory of inmates possessing a liberty interest through classification of inmates into different categories based on their likelihood of parole. See Mich. Admin. Code r. 791.7716. The Court did not find that a statutory delineation of which inmates may be eligible for parole affected the liberty interest in Allen, so it cannot affect our analysis here. See Allen, 482 U.S. at 376-77 & n. 7, 107 S.Ct. 2415 (citing Mont.Code Ann. § 46-23-201 (1985)).
Second, the majority attests that “substantial and compelling reasons” is a “broad, and undefined, expression of the factual predicate [which] necessarily vests greater discretion in the [parole b]oard than those in Allen and Greenhottz.” Op. at 403. This is not so. The “substantial and compelling reasons” requirement permits no more discretion than the enumerated factors in those cases. See, e.g., People v. Babcock, 469 Mich. 247, 666 N.W.2d 231, 237 (2003); In re Parole of Johnson, 219 Mich.App. 595, 556 N.W.2d 899, 902 (1996); Hicks v. Parole Bd., No. 224807, 2001 WL 792153, at *3-4 (Mich.Ct.App. Jan. 9, 2001) (per curiam) (assessing “substantial and compelling” in the context of a parolee with a “high probability of parole” using factors identical to those considered in Allen and Greenhottz). The statutes in Greenhottz and Allen included such broad considerations as “the best interests of society,” and the Nebraska statute in Greenhottz included' a catch-all additional factor. See Allen, 482 U.S. at 376, 107 S.Ct. 2415 (citing Mont.Code Ann. § 46-23-201(2) (1985)); Greenholtz, 442 U.S. at 11 & n. 5, 99 S.Ct, 2100 (citing Neb.Rev. Stat. § 83-1,114(2) (1976)). In all of these cases, the statutory schemes contained parole factors that the majority here terms “broad, and undefined.” Op. at 403. Yet the point is not the “quantification of] the discretion vested with” a parole board, id. at 399, but the determination of “whether the. statute contains mandatory language [that] creates a presumption of release when the designated findings are made,” id. at 399, which — as discussed above — the Michigan parole guidelines do for prisoners with a “high probability of parole.”
Finally, the majority erroneously tries to distinguish a “presumption” from a “probability” by equating the former with a “guarantee.” A “presumption,” however, is merely “an attitude or belief dictated by a probability,” Merriam-Webster, Webster’s Third New International Dictionary 1796 (1993) (emphasis added), or a “legal *408 inference or assumption ... based on the known or proven existence of some other fact or group of facts,” Black’s Law Dictionary (9th ed.2009). Cf Greenholtz, 442 U.S. at 11, 99 S.Ct. 2100 (rejecting the notion that a parole scheme that contained a mere “possibility” of parole created a liberty interest).
In sum, because Michigan’s parole system “creates a presumption that parole release will be granted” to inmates with a “high probability of parole,” see Greenholtz, 442 U.S. at 12, 99 S.Ct. 2100; Mich. Comp. Laws § 791.233e(6), it creates a liberty interest for these individuals. I respectfully dissent.

. Our precedent supports this reading. In Mayes v. Trammell, we explained that "regulations[’] use [of] the word ‘may’ ... is not significant ... [because] stat[ing] the rule in the negative and thus the use of the word 'may,' as opposed to 'shall,' creates even more of an expectation of release.” 751 F.2d 175, 178 (6th Cir.1984) (emphasis in original) (footnote omitted), superseded by statute as noted by Wells v. Tenn. Bd. of Paroles, 909 S.W.2d.826, 828 (Tenn.Ct.App.1995). Also, contrary to the majority’s attempt to distinguish Mayes, though the Tennessee statutory system contained an additional presumption, the Mayes- court's separate treatment of that presumption did not alter its conclusion on this point.