Hubert WATSON, Plaintiff,

v.

Mary DiSABATO and Arthur
Jones, Defendants.

Civil Action No. 93–4437(JCL).

United States District Court,
D. New Jersey.

July 10, 1996.

Hubert Watson, Marlboro, NJ, Pro Se.

Michael Carlin, Deputy Atty. Gen., Office of the Attorney General of New Jersey, Trenton, NJ, for Defendant.

## OPINION

LIFLAND, District Judge.

Defendants, sued in their individual capacities,[1] move for summary judgment pursuant to *Fed.R.Civ.P.* 56, a motion Hubert Watson does not formally oppose. For the reasons set forth below, the Court will grant the defendants' motion in part and deny it in part.

### BACKGROUND

The relevant background information is set forth in the Court's Memorandum and Order dated April 29, 1994. The developments that have occurred since then are summarized below.

On September 12, 1995, the Court decided defendants' initial motion for summary judgment, holding that Watson's claim concerning the defendants' May 17, 1991 denial of parole was time-barred. In addition, the Court granted summary judgment as to Watson's claim that the Adult Panel impermissibly considered his past criminal history in denying him parole. However, the Court denied the motion for summary judgment as to his claims that he was impermissibly denied parole on February 3, 1992 and January 22, 1993, and forced to serve his maximum sentence. It is at these claims that the defendants take aim by this motion.

---

1. This Court's April 29, 1994 Memorandum and Order denying defendants' motion to dismiss noted that the Eleventh Amendment barred the recovery of damages in a suit against state-actors sued in their official capacities. *See Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). The Court permitted this action to proceed as an "individual capacity" suit against Mary DiSabato and Arthur Jones.

## DISCUSSION

 *Fed.R.Civ.P.* 56(c) provides that summary judgment shall be granted:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden of showing that no genuine issue of material fact exists rests initially on the moving party. Once the moving party has shown that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–325, 106 S.Ct. 2548, 2552–2554, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no issue for trial unless the non-moving party can demonstrate that there is sufficient evidence favoring the non-moving party to enable a reasonable fact finder to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–2511. The court must view the facts and inferences therefrom in the light most favorable to the nonmoving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

*The Liberty Interest Created by the Parole Act*

 Watson brought this suit under 42 U.S.C. § 1983, a Reconstruction Era statute that created a cause of action for those claiming that a person acting under color of state law has violated the Constitution or laws of the United States. Thus, we must first determine whether the conduct Watson challenges violated federal law, that is, whether DiSabato and Jones infringed Watson's constitutional rights in the manner by which they denied him parole, and by forcing him to serve his maximum sentence.

 Because there is no constitutional or inherent right to parole, a state may, but need not, establish a system by which a prisoner is released conditionally before the expiration of his term. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–2104, 60 L.Ed.2d 668 (1979). But in *Greenholtz* the Supreme Court held that a state parole statute can create an entitlement protected by the Due Process Clause. The unique structure and language of the Nebraska statute challenged in *Greenholtz* created not merely a possibility but an "expectancy of release" that warranted the procedural safeguards of the Due Process Clause. *Id.; see Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). The New Jersey parole statute contains the same "shall" and "unless" language that *Greenholtz* and *Allen* held created an expectation of release:

An adult inmate shall be released on parole at the time of parole eligibility, unless information ... indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time.

N.J.S.A. § 30:4–123.53(a). In light of this language, federal and state courts in New Jersey have construed New Jersey's parole statute to give rise to an expectancy of release similar to that first described in *Greenholtz.* "The New Jersey Parole Act of 1979, set out in N.J.S.A. §§ 30:4–123.45 to .69, creates 'a sufficient expectation of parole eligibility to entitle prisoners to some measure of constitutional protection with respect to parole eligibility decisions.'" *Williams v. New Jersey State Parole Board,* 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992) (quoting *New Jersey State Parole Board v. Byrne,* 93 N.J. 192, 203, 460 A.2d 103 (1983)), *aff'd,* 975 F.2d 1553 (3d Cir.1992).

However, in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), a case dealing with prison disciplinary proceedings, the Supreme Court criticized the methodology used in *Greenholtz, Allen,* and *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), a methodology that tended to overlook the nature of the alleged deprivation and focus instead on the language used in a statute or regulation. Decisions that ascribed talismanic importance to

"discretion-cabining" language in prisoner regulations have, the Court explained, "strayed from the real concerns undergirding the liberty protected by the Due Process Clause." —— U.S. at ——, 115 S.Ct. at 2300. Furthermore, allowing the existence of a state-created liberty interest to turn on whether a statute contained mandatory language "create[d] disincentives for States to codify prison management procedures in the interest of uniform treatment ... and has led to the involvement of the federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.* at ——, 115 S.Ct. at 2299.

 While state laws after *Sandin* may still create liberty interests protected by the Due Process Clause, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at ——, 115 S.Ct. at 2300 (internal citations omitted). The intended scope of this language is unclear. *See id.* at ——, 115 S.Ct. at 2306 (Breyer, J., dissenting). Is a denial of the process mandated by a state parole statute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"? *Sandin* intimates that it might be since the Court carefully distinguished the disciplinary procedure challenged in that case from situations like parole "where the State's action will inevitably affect the duration of [an inmate's] sentence." *Id.* at ——, 115 S.Ct. at 2302. Moreover, *Sandin* did not overrule *Greenholtz* and, in fact, favorably cited *Allen. See id.* and n. 5. Conceding the uncertain status of *Greenholtz* and *Allen,* the Court agrees with the D.C. Circuit that "we must follow *Greenholtz* and *Allen,* because, unlike *Sandin,* they are directly on point. Both cases deal[t] with a prisoner's liberty interest in parole; *Sandin* [did] not." *Ellis v. District of Columbia,* 84

F.3d 1413, 1418 (D.C.Cir.1996). *See Wilson v. Kelkhoff,* 86 F.3d 1438, 1446 (7th Cir.1996) ("It appears that the Court intended to leave undisturbed the cases holding that a protectable liberty interest exists in parole statutes that create an 'expectancy of release.' "); *Orellana v. Kyle,* 65 F.3d 29, 32 (5th Cir.1995) (In *dicta,* the Court observed that "Orellana's claims might have implicated the narrow range of prisoner liberty interests remaining after *Sandin* because he challenge[d] procedures relative to parole, which affect the duration of confinement."), *cert. denied,* —— U.S. ——, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996); *Quartararo v. Catterson,* 917 F.Supp. 919, 938–939 (E.D.N.Y.1996); *Cf. Henry v. Sanchez,* 923 F.Supp. 1266 (C.D.Cal.1996). The Court therefore concludes that *Greenholtz, Allen, Williams* and *Byrne* remain good law after *Sandin.*[2]

## The Requirements of Due Process

 Concluding that a prisoner has a liberty interest in parole decisions, the Court must still consider what process is due. To answer this question, we must assess and balance the competing interests of the prisoner and the state. As explained in *Byrne,*

> The joint interests of society and the prisoner in basic fairness require some measure of protection from gross miscarriages of justice and totally arbitrary action.... Only a few, basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context.

*Williams,* 1992 WL 32329 at *3 (quoting *Byrne,* 93 N.J. at 211). *Williams* emphasized that due process is a flexible concept that varies "as the particular situation demands." *Williams,* 1992 WL 32329 at *3. In this particular context, the process required is notice of the pendency of the parole determination, a statement by the government showing that the prisoner is substantially likely to recidivate, and an opportunity for the prisoner to submit a written response to the state's reasons. *See Byrne,* 93 N.J. at 211; *Williams,* 1992 WL 32329 at *3.

---

**2.** Inexplicably, the defendants' brief does not even mention *Sandin v. Conner,* —— U.S. ——,

115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*The Denial of Parole on January 22, 1993*

█ The record reflects that Watson received an explanation as to why he fell short of qualifying for parole. The Board's notice of decision (Defendants' Exhibit D) and its letter of June 30, 1993 (Defendants' Exhibit H) delineated the factors upon which its decision was based: 1) he had received an additional institutional charge since his last hearing; 2) he had not participated in supportive programs as he was requested to do at his last hearing; and 3) his professional reports and institutional reports were subpar. Each of these factors is among the twenty-two listed in N.J.A.C. 10A:71–3.11(b) for the Board's consideration when rendering a parole decision.[3]

He also had an opportunity to be heard at his hearing before the Parole Board on November 2, 1992, and to appeal the Board's decision, as accomplished by his February 29, 1993 letter alleging that one of the panel members was "out of touch with reality." (Defendants' Exhibit E) The Adult Panel reviewed this matter, according to its letter of March 26, 1993, and affirmed its initial decision. (Defendants' Exhibit F) Watson appealed to the Board again by letter of April 27, 1993, this time asserting that the Panel failed to demonstrate a substantial likelihood of recidivism. (Defendants' Exhibit G) The Board responded on June 30, 1993 by listing the specific factors discussed above that, in its judgment, evidenced a substantial likelihood of recidivism. (Defendants' Exhibit H) It is abundantly clear that Watson had ample opportunity to voice his objections to the denial of his parole on January 22, 1993. Accordingly, the Court will grant summary judgment as to this claim because the Board indisputably satisfied the mandate of the Due Process Clause by explaining the bases for its conclusion that Watson was substantially likely to recidivate and by giving him an opportunity to respond.

*The Denial of Parole on February 3, 1992*

█ The Board's denial of parole on February 3, 1992 also satisfied the requirements of due process. The notice of decision explains why Watson failed to qualify for parole: 1) he had an extensive and repetitive criminal history; 2) the opportunities afforded him under community supervision had failed to deter criminal activity; and 3) his record indicated institutional misconduct and lack of participation in some programs. Again, the Board appropriately considered these factors because the factors are among the twenty-two listed in the Administrative Code. Therefore, there is no dispute that the explanation that Watson received satisfied the requirements of procedural due process.

As for the requirement of an opportunity to be heard, Watson received a hearing on January 27, 1992, and the Board's notice of decision (Defendants' Exhibit B) instructed him about how to appeal the decision. This, too, establishes beyond any genuine dispute that the defendants afforded Watson the opportunity to respond that is required by the Due Process Clause. Summary judgment will be granted as to this claim as well.

*Failure to Establish a Future Parole Eligibility Date*

█ The New Jersey Parole Act creates a protected liberty interest not only in the granting of parole, but also in "receiving a future parole eligibility date enumerated in the statutory schedule when denied parole." *Williams,* 1992 WL 32329 at *3. This is consistent with the *Greenholtz* line of cases because it would be a rather illusory liberty interest if the state could subvert a prisoner's constitutionally-guaranteed procedural rights by its failure to first set a parole eligibility date in accordance with the Parole Act.

█ In this suit, Watson asserts that "after the third denial of parole, the Adult Panel arbitrarily stripped plaintiff of his right to any future parole hearings ... by directing plaintiff to serve his maximum term without the benefit of being provided with any further parole hearings...." (Plaintiff's Narrative Written Statement, Nov. 13, 1994,

---

**3.** Under N.J.A.C. 10A:71–3.11(b), the Board may consider such factors as the nature and pattern of previous convictions, adjustments to previous probation, parole and incarceration, any pattern of disciplinary infractions, and participation in institutional programs which could have led to the improvement of problems diagnosed at admission or during incarceration.

at 2.) Indeed, the record reveals that Watson was entitled to a presumptive eligibility term of twenty months. (Defendants' Exhibit J) His Parole Eligibility Form also indicates aggravating factors that may have justified increasing this term by up to nine months and a mitigating factor that may have justified decreasing the term by up to nine months. However, the form nowhere records a conclusive determination as to a future eligibility term. Construed liberally, Watson's claim is that this violated his rights because his case does not fit within the specific circumstances in which a prisoner has no constitutionally-protected expectancy in receiving a future parole eligibility date: "If an inmate's maximum sentence(s) will expire prior to the future parole eligibility date otherwise established by the Board panel or Board, the Board panel or Board shall direct that such inmate serve his or her maximum sentence(s)." N.J.A.C. 10A:71–3.21(g).

In the September 12, 1995 Memorandum and Order, this Court denied the defendants summary judgment on this issue because "there [was] nothing in the record to indicate that plaintiff's maximum sentence [would have] expire[d] before his next parole eligibility date." To remedy this defect in their argument, DiSabato and Jones now postulate that: "[h]ad Watson received the maximum eligibility term of twenty-nine months ... [and] had Watson received the maximum amount of 196 commutation credits allowable ... his actual eligibility date would have been October, 19, 1994, twelve days beyond his maximum sentence date." (Defendants' brief at 18.) Unfortunately for the defendants, the parole regulations do not permit such an argument.

According to the text of N.J.A.C. 10A:71–3.21(g), for the state to compel a prisoner to serve his maximum sentence, the maximum sentence must expire before "the future parole eligibility date otherwise established", not before some date that the Board *could* have established. Contrast this provision with N.J.A.C. 10A:71–7.16(s), N.J.A.C. 10A:71–7.16A(t) and N.J.A.C. 10A:71–7.16B(r), sections that apply only to inmates who violated parole, and that explicitly allow establishment of a hypothetical, retrospective parole eligibility date such as the defendants here advocate. For example, N.J.A.C. 10A:71–7.16(s) states that:

> If an inmate's maximum sentence will expire prior to the future parole eligibility date that *could* be established pursuant to (b), (c), (d), (e), (f), (g), (h), (i) above or the future parole release date that *could* be established pursuant to (j) or (k) above, the appropriate Board panel may direct that such inmate serve his or her maximum sentence and not be eligible for parole consideration on the balance of the maximum sentence. (Emphasis added).[4]

Because it is axiomatic that a court construe statutory or regulatory sections *in pari materia,* the explicit inclusion of "could" in some sections of the Code suggests that the exclusion of this language in N.J.A.C. 10A:71–3.21(g) bears interpretive significance. Thus, the Court is convinced that N.J.A.C. 10A:71–3.21(g) means precisely what it says—it requires that a parole eligibility date be set, even if the term would have expired before the future eligibility date.[5] Because the defendants have failed to establish that the maximum sentence would

---

**4.** N.J.A.C. 10A:71–7.16A(t) provides: "If an inmate's maximum sentence will expire prior to the parole release date that could be established pursuant to (a)2 above, the future parole eligibility date that could be established pursuant to (b), (c), (d), (e), (f), (g), (h), (i), (j) above or the future parole release date that could be established pursuant to (k) or (*l*) above, the appropriate Board panel may direct that such inmate serve his or her maximum sentence and not be eligible for parole consideration on the balance of the maximum sentence."

N.J.A.C. 10A:71–7.16B(r) states: "If an inmate's maximum sentence will expire prior to the parole release date that could be established

pursuant to (a)2 above, the future parole eligibility date that could be established pursuant to (a)3, (b), (c), (d), (f), (g) or (h) above or the future parole release date that could be established pursuant to (i) or (j) above, the appropriate Board panel may direct that such inmate serve his or her maximum sentence and not be eligible for parole consideration on the balance of the maximum sentence."

**5.** Because nothing in the record indicates that Watson violated his parole, the defendants cannot take advantage of the license for hypothetical argument allowed by other Administrative Code sections.

have expired before an *established* future parole eligibility date, summary judgment will once again be denied as to this claim.[6]

---

**6.** The Court notes that the defendants have not argued that they possess any type of immunity.