Filed 12/11/20  P. v. Uhuru CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KOHEN DIALLO UHURU,<br><br>    Defendant and Appellant. | D076648<br><br><br><br>(Super. Ct. No. SCD123050) |

APPEAL from an order of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

In 2000, Kohen Diallo Uhuru pled guilty to one count of second degree murder and admitted an allegation that he personally used a firearm in the commission of the offense.  (Pen. Code, §§ 187, subd. (a), 12022.5,

subd. (a)(1).)[1]  In connection with his guilty plea, he stipulated to a prison sentence of 25 years to life.  In 2019, he petitioned for resentencing under section 1170.91 claiming he had served in the military, suffered from mental health conditions, and was entitled to resentencing.  Without first conducting a hearing, the trial court issued a written order denying Uhuru's petition.  On appeal, Uhuru contends (1) the trial court's denial of his petition without first conducting a hearing violated section 1170.91, subdivision (b)(3); (2) the failure to conduct a hearing violated his due process rights; and (3) he was deprived of his Sixth Amendment right to counsel during resentencing.  We reject Uhuru's claims of error and affirm the trial court's order denying Uhuru's petition.

PROCEDURAL BACKGROUND

In 1999, an information charged Uhuru with murder (§ 187, subd. (a)), alleged he personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)(1)), and further alleged he intentionally killed the victim while lying in wait (§ 190.2, subd. (a)(15)).[2]

In 2000, Uhuru pled guilty to one count of murder in the second degree (§ 187, subd. (a)) and admitted the allegation that he used a firearm in the commission of the offense (§ 12022.5, subd. (a)(1)).  In his plea agreement, he stipulated to a total sentence of 25 years to life, comprised of 15 years to life for the homicide, plus an additional 10 years to run consecutively for the gun

---

[1]  Statutory references are to the Penal Code.

[2]  There is no probation report or other document in the record containing the facts underlying Uhuru's offense.  The details of Uhuru's offense were not discussed by the parties in their briefs and are not relevant to the issues on appeal.  We omit a discussion of facts relating to Uhuru's offense, and limit our discussion of the procedural history to matters relevant to this appeal.

use enhancement. The trial court sentenced Uhuru according to the stipulated plea agreement to a prison term of 15 years to life, plus 10 years, for a total term of 25 years to life in prison.

On August 16, 2019, Uhuru filed in propria persona a petition for resentencing under section 1170.91 claiming he had served in the military, suffered from mental health conditions, and was entitled to resentencing. In his petition, Uhuru alleged that "he was a member of the U.S. [m]ilitary with an [h]onorable [d]ischarge and he entered with . . . preexisting [m]ental [d]isorders of . . . [p]ost[-][t]raumatic [s]tress [d]isorder, traumatic brain injury from being beat in the head with baseball bats and later gunshot wound in the head, traumatic brain injury (TBI) from totaling out his brand new 1985 Mercedes Benz during blackouts, [p]ost[-][s]lavery [t]rauma [s]yndrome from being abused as a child and taken in the woods by adult men of (KKK) affiliation and nearly lynched if he would not perform oral copulation on one of them when he was only five (5) years old whereby the [p]etitioner's [m]ental [d]isorders persisted after his [m]ilitary [s]ervice whereas the [p]etitioner is eligible for recall of sentence and resentencing pursuant to [section 1170.91]." He additionally claimed "he is a person who is suffering from traumatic brain injury, [p]ost[-][t]raumatic [s]tress [d]isorder, [s]ubstance [a]buse, [p]ost[-][s]lavery [t]rauma [s]yndrome, and [c]hronic [p]ain from his [w]ork injuries sustained during [c]ivil [s]ervice [e]mployment . . . ." Uhuru further stated that he was honorably discharged from the Air Force in 1974, suffering from a substance abuse problem which he did not have prior to his military service, and he is therefore "eligible for

3

recall of sentence and resentencing under [section 1170.91]."[3] Uhuru submitted a document with his petition reflecting subsequent employment with the Department of the Navy, and stated in his petition that he retired due to "permanent disability" prior to being incarcerated for the commitment offense. He also attached a copy of the assembly bill amending section 1170.91 (Stats. 2018, ch. 523, § 1, eff. Jan. 1, 2019) (Assembly Bill No. 865).[4] He requested that the court appoint counsel.

On August 21, 2019, the court issued a written order denying Uhuru's petition for resentencing. The court found that Uhuru was not entitled to relief. The court reasoned that resentencing under section 1170.91 is only available to a military member suffering from a mental health condition "as a result of his or her military service" (§ 1170.91, subd. (a)), and, because Uhuru alleged his ailments *predated* his military service, he was ineligible for relief by his own admission. The court found Uhuru was also ineligible for relief because section 1170.91 applies only to cases in which the defendant was sentenced under the determinate sentencing scheme (§§ 1170.91, subd. (a), 1170, subd. (b)), and Uhuru is serving an indeterminate life sentence.

---

[3]     Uhuru's summary is unclear, but he nonetheless appears to attribute his substance abuse at least in part to his military service, stating: "Petitioner further contends that he was a member of the United States [m]ilitary and [h]onorably [d]ischarged from the United States Air Force in 1974 and he did suffer from substance abuse because prior to entering the [m]ilitary, the Petitioner never indulged in [a]lcohol nor drugs . . . ." He makes similar assertions in his notice of appeal.

[4]     The "Notification of Personnel Action" reflected "creditable military service" of one year, eight months.

DISCUSSION

Uhuru contends the trial court erred when it failed to hold a hearing on his eligibility for relief as required by statute; the failure to hold a hearing prior to denying his petition violated his constitutional due process rights; and the failure to appoint counsel in connection with these proceedings violated his rights under the Sixth Amendment. We conclude the trial court correctly denied Uhuru's petition because he is not entitled to relief under section 1170.91.

A. *Statutory Right to a Hearing*

Uhuru's first contention, that a hearing was required before the trial court could deny his petition, is a question of statutory interpretation which we review de novo. (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.)

Before section 1170.91 was amended through Assembly Bill No. 865, trial courts were required to consider any trauma, substance abuse, and mental health problems caused by a defendant's service in the United States military as a mitigating factor at sentencing. (§ 1170.91, subd. (a), enacted by Stats. 2014, ch. 163, § 2; effective January 1, 2015.) "In 2018, the Legislature amended section 1170.91 to provide relief for former or current members of the military who were sentenced before January 1, 2015, and did not have their mental health and substance abuse problems considered as factors in mitigation during sentencing. (Stats. 2018, ch. 523, § 1.)" (*People v. King* (2020) 52 Cal.App.5th 783, 788 (*King*).)

As amended, section 1170.91 now provides in pertinent part as follows:

> "(a) If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service, the court shall consider the

5

circumstance as a factor in mitigation when imposing a term under subdivision (b) of Section 1170.[5] This consideration does not preclude the court from considering similar trauma, injury, substance abuse, or mental health problems due to other causes, as evidence or factors in mitigation.

"(b)(1) A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service may petition for a recall of sentence, before the trial court that entered the judgment of conviction in his or her case, to request resentencing pursuant to subdivision (a) if the person meets both of the following conditions:

"(A) The circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing.

"(B) The person was sentenced prior to January 1, 2015. This subdivision shall apply retroactively, whether or not the case was final as of January 1, 2015."

The procedure that a court should follow in considering a petition for relief is set forth in section 1170.91, subdivision (b)(3), which provides: "Upon receiving a petition under this subdivision, the court shall determine, at a public hearing held after not less than 15 days' notice to the prosecution, the defense, and any victim of the offense, whether the person satisfies the

---

5     Section 1170, subdivision (b) provides in part, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." "These terms are generally referred to as 'determinate sentences.'" (*People v. Felix* (2000) 22 Cal.4th 651, 654 (*Felix*).)

6

criteria in this subdivision. At that hearing, the prosecution shall have an opportunity to be heard on the petitioner's eligibility and suitability for resentencing. If the person satisfies the criteria, the court may, in its discretion, resentence the person following a resentencing hearing."

Thus, to be eligible for resentencing under section 1170.91, subdivision (b): the petitioner must be convicted of a felony for which he is serving a term imposed under section 1170, subdivision (b) (i.e., a determinate sentence) (§ 1170.91, subd. (a)); the petitioner must have served in the military (*id.*, subd. (b)(1)); the petitioner must claim to suffer from "sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his . . . military service" (*ibid.*); the circumstance of suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems must not have been considered as a factor in mitigation at the time of sentencing (*id.*, subd. (b)(1)(A)); and the petitioner must have been sentenced prior to January 1, 2015 (*id.*, subd. (b)(1)(B)). (See *People v. Bonilla-Bray* (2020) 49 Cal.App.5th 234, 238 (*Bonilla-Bray*).)

Although the statute provides an avenue for qualifying defendants to seek relief, the statute also provides that, "This subdivision does not diminish or abrogate the finality of judgments in any case not falling within the purview of this subdivision." (§ 1170.91, subd. (b)(8).)

As noted, Uhuru contends the trial court violated section 1170.91 by denying his petition without holding a hearing. The Attorney General responds that the trial court did not err because Uhuru is ineligible for relief, and even if the court had held a hearing, it nonetheless would have had to deny the petition because Uhuru did not even allege that he suffered any of the qualifying conditions as a result of his military service.

7

We need not decide if Uhuru was entitled to a hearing on his petition because he is ineligible for resentencing under section 1170.91. (Cf. *Bonilla-Bray*, *supra*, 49 Cal.App.5th at pp. 238-239 [trial court erred in summarily denying petition which made a prima facie showing of entitlement to relief under the statute].) By its plain language, section 1170.91 applies only to terms imposed under section 1170, subdivision (b), i.e., determinate terms. (§§ 1170.91, subd. (a), 1170, subd. (b); see *Felix*, *supra*, 22 Cal.4th at p. 654.) Indeterminate terms, such as the one Uhuru is serving for second degree murder, are imposed under section 1168, subdivision (b). (*Felix*, at p. 655, see also *id.* at p. 659 ["sentences of some number of years to life are indeterminate sentences not subject to the DSA [determinate sentencing act, section 1170 et seq.]"].) The ten-year firearm enhancement (§ 12022.5, subd. (a)(1)) was imposed under section 1170.1, subdivision (d).[6] Because Uhuru's sentence was not imposed under section 1170, subdivision (b), as required for resentencing under section 1170.91, Uhuru is ineligible for the relief provided to military veterans under section 1170.91.

In addition, as this court held in *King*, the trial court would have been required to impose the same stipulated sentence even if it had held a hearing on Uhuru's petition. (*King*, *supra*, 52 Cal.App.5th at pp. 790-791.) As in the present case, *King* involved an appeal from an order denying a defendant's

---

[6] The statute in effect when Uhuru was sentenced provided as follows: "When the court imposes a prison sentence for a felony pursuant to Section 1170, the court shall also impose the additional terms provided for any applicable enhancements. The court shall also impose any other additional term that the court determines in its discretion or as required by law shall run consecutive to the term imposed under Section 1170. In considering the imposition of the additional term, the court shall apply the sentencing rules of the Judicial Council." (Former section 1170.1, subd. (d), Stats. 1998, ch. 925, § 4.)

petition for recall of sentence pursuant to section 1170.91, subdivision (b). Because the defendant was not eligible for relief under the statute, we held that any assumed error in failing to hold a hearing in connection with defendant's request was not prejudicial. (*King*, at p. 786.) As we explained, "King agreed to a stipulated sentence for a term of years in 2009, and the trial court accordingly would have no discretion on resentencing to depart from the stipulated sentence regardless of King's mental health and substance abuse problems." (*Id*. at pp. 786-787.)

Similarly here, it is not reasonably probable that Uhuru would have obtained a more favorable result had the trial court held a hearing. (*King, supra*, 52 Cal.App.5th at p. 790 [analyzing harm of trial court's denial of section 1170.91 petition under standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836].) In connection with his guilty plea to second degree murder in 2000, Uhuru stipulated to a sentence of 25 years to life in prison. The trial court accepted Uhuru's guilty plea and is bound by it. (*King*, at pp. 790-791.) If the trial court held a resentencing hearing on Uhuru's petition, it would be required to impose the same stipulated sentence of 25 years to life in prison. (*Id*. at p. 791.) Any assumed error in the trial

court's failure to hold a hearing to consider Uhuru's petition was therefore not prejudicial. (*Id.* at p. 794.)[7]

B. *Due Process*

We also reject Uhuru's claim that the rejection of his petition without a hearing violated his due process rights.

Relying on *Greenholtz v. Inmates of Neb. Penal & Correctional Complex* (1979) 442 U.S. 1 (*Greenholtz*) and *Board of Pardons v. Allen* (1987) 482 U.S. 369 (*Allen*), Uhuru argues that he has a due process liberty interest in mitigating punishment. He therefore contends he was entitled to "notice of a decision to recall a sentence, the opportunity to be heard, and a statement of reasons for a denial."

*Greenholtz* and *Allen* both concerned release on parole. We are not persuaded by Uhuru's argument that "section 1170.91, subdivision (b)(1) created [a] liberty interest in resentencing similar to an eligible prisoner's interest in parole." The parole provisions are mandatory for eligible prisoners. (See *In re Prather* (2010) 50 Cal.4th 238, 251, italics added [the Parole Board and Governor "*must* consider the statutory factors concerning parole suitability set forth in section 3041 as well as the [Parole] Board regulations" in exercising their discretion to grant parole]; *In re Shelton*

---

[7] The Attorney General also contends the trial court properly denied Uhuru's petition because "[n]othing in the record, including appellant's petition, alleges any of the required conditions resulted from his military service." Although Uhuru alleged some of his qualifying health conditions "preexist[ed]" his military service and "persisted" thereafter, the petition may also be liberally construed as alleging he suffered from a substance abuse problem as a result of his military service. Given our conclusion that Uhuru is ineligible for resentencing because the statute applies only to determinate sentences and not to indeterminate sentences, such as the one that he is currently serving, and because he is bound by his stipulated sentence, we need not address this additional argument.

(2020) 53 Cal.App.5th 650, 663 [" ' "parole is the rule, rather than the exception" ' "].)[8]  Section 1170.91 does not create a comparable expectation of resentencing for non-eligible defendants like Uhuru.  The fact that courts have recognized a due process liberty interest in parole decisions therefore does not assist Uhuru here.

The court's ruling in *People v. Frazier* (2020) 55 Cal.App.5th 858 (*Frazier*) is instructive.  In that case, the Secretary of the Department of Corrections and Rehabilitation wrote a letter to the trial court recommending that defendant be resentenced pursuant to section 1170, subdivision (d). (*Frazier*, at p. 862.)  Without holding a hearing or appointing counsel for the defendant, the trial court denied the request.  (*Id*. at p. 863.)  On appeal, the court rejected defendant's argument that her due process rights were violated.  As the court explained, "There simply is no constitutional right to

8      The relevant statutory schemes in *Greenholtz* and *Allen* similarly mandated a prisoner's release if the parole board determined that the necessary prerequisites existed.  The parole statute at issue in *Greenholtz* provided:  " 'Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release *unless* it is of the opinion that his release should be deferred because: [¶] (a) There is a substantial risk that he will not conform to the conditions of parole; [¶] (b) His release would depreciate the seriousness of his crime or promote disrespect for the law; [¶] (c) His release would have a substantially adverse effect on institutional discipline; or [¶] (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.' " (*Greenholtz, supra,* 442 U.S. at p. 11, italics added.)  The relevant statute in *Allen* stated:  " 'Prisoners eligible for parole.  (1) Subject to the following restrictions, the board *shall* release on parole . . . any person confined in the Montana state prison or the women's correction center . . . when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community[.]' " (*Allen, supra,* 482 U.S. at p. 376.)

11

counsel or a hearing in connection with every postjudgment request with the potential to affect a substantial right." (*Id.* at p. 867.) The court cited Proposition 36 as an example to support its conclusion that due process protections are not triggered where, as here, the defendant has not proceeded to an actual resentencing hearing: "An inmate seeking recall and resentencing under Proposition 36 (the Three Strikes Reform Act of 2012) (§ 1170.126) . . . has a right to appeal from the summary denial of a petition for recall and resentencing following a finding the petitioner is ineligible for relief because that determination is an order after judgment affecting the petitioner's substantial rights [citation], but there is no due process right to a hearing in connection with the trial court's eligibility determination. [Citations.] It is only after the petitioner's eligibility has been established and the statutory mandate for resentencing triggered [citation] that due process protections, including the right to a hearing, attach to the determination whether the defendant will be awarded the relief sought." (*Ibid.*)

As in *Frazier*, Uhuru's due process rights were not implicated here. Moreover, requiring the trial court to conduct a hearing in this case would be futile because Uhuru was not eligible for relief and the court did not have the discretion to depart from the stipulated sentence of 25 years to life in prison. (See *People v. Edwards* (2020) 48 Cal.App.5th 666, 675 ["since [the defendant] does not fall within the provisions of section 1170.95 as a matter of law, any of the purported errors [including failing to hold a hearing] were harmless under any standard of review [citations] and remand would be an idle act"].)

C. *Sixth Amendment Right to Counsel*

Uhuru also claims the trial court's failure to appoint counsel in connection with his petition violated his Sixth Amendment right to counsel. (U.S. Const., 6th Amend. ["In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [defense]."].) We disagree.

The Sixth and Fourteenth Amendments secure the right to assistance of counsel at all " 'critical' stages of the proceedings." (*United States v. Wade* (1967) 388 U.S. 218, 224; *Gideon v. Wainwright* (1963) 372 U.S. 335, 341.) Emphasizing that sentencing is considered a critical stage of a criminal proceeding within the meaning of the Sixth Amendment (*People v. Parrott* (2017) 10 Cal.App.5th 485, 496), Uhuru contends "[t]he decision to recall a sentence" under section 1170.91 also qualifies as a critical stage "because it involve[s] sentencing." The only authority Uhuru cites arises in the context of actual sentencing hearings; he cites no authority holding that the Sixth Amendment right to the assistance of counsel applies in the context of the type of post-conviction relief he seeks here. The law does not support Uhuru's contention that he was entitled to the assistance of counsel in pursuing his post-conviction petition to reduce his sentence, particularly where his petition was deficient on its face and he was not eligible for relief. (*People v. Shipman* (1965) 62 Cal.2d 226, 232 ["in the absence of adequate factual allegations stating a prima facie case, counsel need not be appointed either in the trial court or on appeal from a summary denial of [post-conviction] relief in that court"]; *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 979-981 [same as to defendant seeking post-conviction relief in trial court under section 1473.7]; see also *Pennsylvania v. Finley* (1987) 481 U.S. 551,

13

555 ["the [constitutional] right to appointed counsel extends to the first appeal of right, and no further"].)

Courts construing other post-conviction resentencing statutes have similarly concluded a defendant like Uhuru does not have a constitutional right to the assistance of counsel in seeking post-conviction relief. As the court explained in *Frazier*, "the Sixth Amendment right to counsel at critical stages of a criminal proceeding through sentencing does not apply to postjudgment collateral challenges [citations], including statutory petitions seeking a more ameliorative sentence [citations], at least prior to the actual recall of sentence." (*Frazier*, *supra*, 55 Cal.App.5th at pp. 865-866.) We agree with this analysis and reject Uhuru's contention that the trial court's denial of his petition violated his constitutional right to the assistance of counsel. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1064 [legislation "intended to give inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws" does not implicate the Sixth Amendment].) The Sixth Amendment right to counsel does not apply to a post-conviction petition, like Uhuru's, showing that relief is unavailable as a matter of law.

DISPOSITION

The order is affirmed.


                                                    GUERRERO, J.

WE CONCUR:



HALLER, Acting P. J.



AARON, J.